UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KRITINA LEE KNIEF,

                              Plaintiff,                    **DECISION AND ORDER**

            -against-                                       20 Civ. 6242 (PED)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**


     Plaintiff Kritina Lee Knief brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final determination of the Commissioner of Social Security (the

"Commissioner") denying plaintiff's application for disability insurance benefits.  On September

24, 2020, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).

Dkt. #11.

     Presently before this Court are the parties' cross-motions for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #15 (plaintiff's motion), #16

(plaintiff's memorandum of law), #23 (defendant's cross-motion), #24 (defendant's

memorandum of law) and #25 (plaintiff's reply)).  Plaintiff argues, as the basis for her motion,

that the Administrative Law Judge ("ALJ") failed to weigh the opinion evidence in accordance

with the proper legal standards.  Dkt. #16, at 7-12.[1]  Defendant asserts, in response, that the ALJ

applied the correct legal standards and that substantial evidence supports the ALJ's decision.

Dkt. #42, at 15-26.  For the reasons set forth below, plaintiff's motion is **DENIED** and

defendant's motion is **GRANTED**.

--------------------------------------------

[1] Citations to specific page numbers reflect document (and not ECF) pagination.

# I. BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on January 29, 2021 (Dkt. #14).[2]

A. Application History

On August 29, 2017, plaintiff filed an application for disability benefits, alleging that she had been disabled since November 30, 2015 due to bipolar disorder, severe depression, anxiety disorder, panic disorder and possible post-traumatic stress disorder ("PTSD"). R. 136, 152-54, 259. On or about December 14, 2017, plaintiff was notified that her claim had been administratively denied. R. 155-59. She requested a hearing before an Administrative Law Judge ("ALJ"); a hearing was held on May 20, 2019 before ALJ Kieran McCormack. R. 85-135. Plaintiff appeared with counsel and testified at the hearing. R. 87, 93-124, 131-32.[3] On May 31, 2019, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA"). R. 50-60. The ALJ's decision became the final order of the Commissioner on June 3, 2020, when the Appeals Council denied plaintiff's request for review. R. 21-42. This action followed.

B. Consultative Psychological Evaluation

On October 26, 2017, psychologist Alex Gindes conducted a consultative examination of plaintiff. R. 394-98. Plaintiff reported "a history of chronic recurrent depressive episodes with 'extreme highs and lows' that have been somewhat modulated with treatment." R. 394. She

---

[2] The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed. I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

[3] Vocational expert Robert Baker also testified at the hearing. R. 85-86, 94-95, 125-30.

reported "dysphoria with psychomotor retardation, crying spells, diminished sense of pleasure, and social withdrawal, alternating with periods of elevated mood, increased goal-directed activity, and pressured speech." R. 394-95. Plaintiff denied suicidal/homicidal ideations and symptoms of psychosis and cognitive disorder. R. 395. Dr. Gindes observed that plaintiff "generally seems to be apprehensive of being around people" and "appeared to have significant problem with cognition today, particularly concentration." *Id.* The doctor noted that plaintiff is able to dress, bathe and groom herself, shop, manage money, and that she occasionally cooks, cleans, does laundry and drives a car. R. 396.

Plaintiff was cooperative during the mental status examination and exhibited adequate social skills, although she "related in a highly tense manner." R. 395. Dr. Gindes noted that plaintiff was well-groomed and her eye contact was appropriate. *Id.* Her posture was tense; her motor behavior was normal. *Id.* Plaintiff's speech was fluent, her voice was clear and her expressive and receptive language skills were adequate. *Id.* According to Dr. Gindes, plaintiff's thought processes "were occasionally irrelevant and loose with no evidence of hallucinations, delusions, or paranoia in the evaluation setting" and she was oriented to person, place, and time. *Id.* Plaintiff's affect "seemed tense and depressed" and her mood was dysthymic. *Id.* Dr. Gindes noted that plaintiff's attention and concentration "were impaired by anxiety in the evaluation and emotional distress associated with depression." R. 396. She "did well" on simple calculations and serial 3's, but count not perform serial 7's. *Id.* The doctor also noted that plaintiff's recent and remote memory skills were mildly impaired: she was able to recall 3/3 objects immediately and 2/3 after five minutes; she could recall three digits forward and one digit backward. *Id.* Dr. Gindes estimated that plaintiff's intellectual functioning was in the normal range. *Id.* The doctor

also noted that plaintiff's general fund of information was appropriate to experience, and that her insight and judgment "seemed good." *Id.*

Dr. Gindes evaluated plaintiff's functional abilities as follows: (1) plaintiff can understand, remember and apply simple directions and instructions, use reason and judgment to make work-related decision, maintain personal hygiene and appropriate attire, be aware of normal hazards and take appropriate precautions; (2) plaintiff is markedly limited in her ability to understand, remember and apply complex directions and instructions, interact adequately with supervisors, coworkers and the public, sustain concentration, perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior and maintain well-being. R. 396-97. Dr. Gindes opined that plaintiff's "difficulties are caused by mood disorder and associated cognitive deficits" which "may significantly interfere with [her] ability to function on a daily basis." R. 397. Dr. Gindes diagnosed unspecified bipolar disorder. *Id.* He recommended that plaintiff continue her mental health treatment for one year, and assessed her prognosis as "fair with appropriate followup." *Id.*

C.  Treating Psychiatrist Opinion

On December 1, 2017, plaintiff's treating psychiatrist (Dr. Adam Elias) issued an opinion regarding plaintiff's ability to perform work-related mental activities. R. 411-13.[4] Dr. Elias noted that he had been treating plaintiff since August 13, 2009 and last examined her on November 7, 2017. R. 411. Dr. Elias listed plaintiff's symptoms (including tearfulness, heightened anxiety, panic attacks and "overly emotionally reactive") and current medications

---

[4] Dr. Elias co-signed the questionnaire, which had been completed and signed by LCSW Joanne Baecher-DiSalvo. R. 413.

(Buproprion, Lamotrignine, Ativan and Lamictal). *Id.* Dr. Elias reported the following mental

status examination findings as of plaintiff's November 7, 2017 visit: anxious and fragile in

presentation; rational and goal-directed thoughts; mood and affect extremely anxious and

distressed ("cries often [and] has difficulty maintaining composure); good attention and

concentration; and fair insight and judgment. R. 411-12.[5] Dr. Elias described plaintiff's

grooming and hygiene as "good" and noted that plaintiff is able to take care of her residence,

cook, shop, drive and take public transportation. R. 412. He opined that plaintiff's

understanding and memory "may be limited at times due to heightened anxiety [and] distress

[and] difficulty regulating emotions." *Id.* He also opined that plaintiff's "]h]eightened anxiety

[and] distress may interfere" with her ability to sustain concentration, persistence and pace. *Id.*

Dr. Elias further opined that plaintiff had no limitation in her ability to interact with others but

her anxiety and difficulty regulating and managing emotions "may negatively impact [her] ability

to adapt at times." R. 413.

D.  State Agency Review Psychologist

On December 5, 2017, State Agency Psychological Consultant L. Hoffman reviewed the

evidence of record and assessed plaintiff's mental residual functional capacity ("MRFC") to

perform sustained work activities. R. 142-43, 147-49. Dr. Hoffman opined that plaintiff has no

limitation in the broad functional area of understanding, remembering or applying information.

R. 143, 147. He assessed that plaintiff has a "mild limitation" in her overall ability to interact

---

[5]  The November 7, 2017 mental examination findings were, in actuality, somewhat
different: although plaintiff was "highly anxious and emotional much of the time" and "tearful,"
she was cooperative and friendly, her affect was "calm [and] more in control" and her mood was
"more stable, serious." R. 457.

with others, specifying that she is: (1) "moderately limited" in her ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors; and (2) "not significantly limited" in her ability to ask simple questions, request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. 143, 148. Dr. Hoffman opined that plaintiff is moderately limited in her overall ability to concentrate, persist or maintain pace, specifying that she is: (1) "moderately limited" in her ability to maintain attention and concentration for extended periods, complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (2) "not significantly limited" in her ability to carry out short, simple instructions and detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them and to make simple work-related decisions. R. 143, 147-48. Finally, Dr. Hoffman assessed that plaintiff is moderately limited in her overall ability to adapt and manage herself, specifying that she is: (1) "moderately limited" in her ability to respond appropriately to changes in the work setting; and (2) "not significantly limited" in her ability to be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals and to make plans independently of others. R. 143, 148.

## II. LEGAL STANDARDS

A. Standard of Review

-6-

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  *See* 42 U.S.C. § 1383(c)(3).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'"  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012).  The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence.  See 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre*

*v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.'" *Velez v. Colvin*, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (quoting *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)). Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.  Statutory Disability

A claimant is disabled under the Social Security Act ("the SSA") when he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

-8-

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security Regulations set forth a five-step sequential analysis for evaluating

whether a person is disabled under the SSA:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v)).[6]  The

claimant bears the burden of proof as to the first four steps of the process.  *See Burgess v. Astrue*,

537 F.3d 117, 120 (2d Cir. 2008).  If the claimant proves that his impairment prevents him from

performing his past work, the burden shifts to the Commissioner at the fifth and final step.  *See*

*Brault*, 683 F.3d at 445.

Additionally, where a claimant suffers from an alleged mental impairment, the ALJ is

required to utilize a "special technique" at the second and third steps.  *See Kohler v. Astrue*, 546

F.3d 260, 265 (2d Cir. 2008); *see also* 20 C.F.R. §§ 404.1520a, 416.920a.  At step two, in

determining whether the claimant has a "severe impairment," the ALJ must rate the claimant's

degree of functional limitation in four areas: (1) understanding, remembering, or applying

---

[6]  In the event that the regulations and Social Security Rulings cited herein were amended subsequent to the ALJ's decision, I discuss (and have applied) the relevant regulations/rulings as they existed at the time of the ALJ's decision.

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the claimant's mental impairment or combination of impairments is severe, then at step three the ALJ must "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." *Kohler*, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(2)).  *See also* 20 C.F.R. § 416.920a(d)(2).  If the claimant suffers from a severe impairment which is not listed (or equivalent in severity to a listed mental disorder), then the ALJ must assess the claimant's residual functional capacity ("RFC").  *See Kohler*, 546 F.3d at 266 (citing § 404.1520a(d)(3)).  *See also* 20 C.F.R. § 416.920a(d)(3).

### III.  THE ALJ'S DECISION

To assess plaintiff's disability claim, the ALJ followed the five-step sequential analysis and applied the "special technique" at steps two and three.  *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920a and discussion, *supra*.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since November 30, 2015 (the alleged onset date). R. 52.  At step two, the ALJ concluded that plaintiff has the following severe impairments: asthma; bipolar disorder; generalized anxiety disorder; and alcohol-related disorder.  R. 53.

At step three, the ALJ determined that plaintiff's impairments (individually or combined) do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 53-55.  In particular, the ALJ found that plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of

-10-

listings 12.04 or 12.06. R. 54.[7] In making this finding, the ALJ first considered whether the "paragraph B" criteria are satisfied. *Id.* "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." *Id.* The ALJ found that plaintiff had moderate limitations in all four areas of functioning. *Id.* Thus, the ALJ concluded that the "paragraph B" criteria were not satisfied. *Id.* The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that the record evidence failed to establish the presence of the "paragraph C" criteria. R. 54-55. Finally, the ALJ noted that the limitations identified in the paragraph B criteria are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process, whereas the mental RFC assessment used at steps 4 and 5 "requires a more detailed assessment." R. 55. Accordingly, the ALJ noted that his RFC assessment "reflects the degree of limitation [I have] found in the 'paragraph B' mental functional analysis." *Id.*

Next, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot work at jobs containing concentrated exposure to airborne irritants such as fumes, odors, dusts, gases, and/or smoke[;] [s]he also can only work at low stress jobs, defined as jobs containing no more than simple, routine, and repetitive tasks, involving only simple work related decisions; with few, if any workplace changes; and where there is only occasional interaction with supervisors, coworkers, and/or the general public.

---

[7] Listing 12.04 is the listing for "depressive, bipolar and related disorders." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Listing 12.06 is the listing for "anxiety and obsessive-compulsive disorders." *See id.*, § 12.06.

R. 55. In reaching this conclusion, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "medical opinion(s) and prior administrative medical finding(s)" in accordance with 20 C.F.R. §§ 404.1520c and 404.1529 and Social Security Ruling 16-3p. *Id.*

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. R. 59. At step five, based upon the vocational expert's testimony (and considering plaintiff's age, education, work experience and RFC), the ALJ concluded that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 60. Thus, the ALJ found plaintiff "not disabled" as defined in the SSA. *Id.*

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to weigh the opinions of Dr. Hoffman, Dr. Elias and Dr. Gindes in accordance with the proper legal standards. Dkt. #16, at 7-12. SSA regulations pertaining to the evaluation of medical evidence have been amended for claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 58844-10, at *5844 (Jan. 18, 2017). Because plaintiff filed her claim on August 29, 2017, the new regulations (codified at 20 C.F.R. §§ 404.1520c and 416.920c) apply.

"Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." *Prieto v. Comm'r of Soc. Sec.*, No. 20 Civ. 3941, 2021 WL 3475626, at *8 (S.D.N.Y. Aug. 6, 2021). Instead, all medical opinions must be evaluated for "their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). "When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2). "An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision." *Prieto*, 2021 WL 3475626, at *9. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Further, in most instances, an ALJ "must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical sources's opinion." *Amber H.*, No. 20 Civ. 490, 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021). However, "where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, the ALJ summarized the opinions from Dr. Hoffman and Dr. Elias, and noted "that Dr. Elias' opinion is somewhat vague as to the degree of the claimant's limitation and her

residual capacity to perform specific mental work-related activities." R. 57. The ALJ continued:

> Nonetheless, the assessments of Drs. Hoffman and Elias are found persuasive, to the degree they are supported[ ] by[,] and consistent with, the substantial evidence of record, including treatment records from Dr. Elias' facility, in suggesting the claimant has meaningful, but not profound, mental restrictions, with expected difficulty performing work activities that she might find stressful and exacerbate her symptoms, but an adequate capacity to sustain simple work activities within the above residual functional capacity.

*Id.* Specifically, the ALJ noted that Dr. Elias' records "document treatment for the claimant's chronic issues with mood disturbance, but overall reflect moderate findings, mostly stable symptoms, and adequate functioning with fairly routine and conservative management with medications . . . ." *Id.* The ALJ also summarized the mental status examination findings and opinion of the consultative examiner, Dr. Gindes, which the ALJ "considered but found unpersuasive." R. 58. The ALJ assessed Dr. Gindes' opinion as follows:

> Both Dr. Gindes' examination findings and his opined limitations stand in stark contrast to the relatively modest findings consistently noted in treatment records, including normal attention and concentration, as discussed above. In addition, the undersigned notes that the claimant denied any drug or alcohol history to Dr. Gindes, which is inconsistent with medical records since before Dr. Gindes' examination documenting a history of alcohol use. This discrepancy highlights the somewhat limited probative value of Dr. Gindes' opinion, a one-time examiner without access to treatment records for review and relying in meaningful part on the claimant's subjective reports and anomalous presentation, rather than a full knowledge of the longitudinal nature of the claimant's impairments, as the basis for his opinion.

*Id.* (internal citations to record omitted).

Plaintiff argues that the ALJ should not have found Dr. Hoffman's opinion to be persuasive because it is internally inconsistent. Dkt. #14, at 11. Specifically, plaintiff asserts Dr. Hoffman "concluded [p]laintiff's only limitation was some difficulty coping with stress," despite having assessed that plaintiff had moderate limitations in concentration, persistence and pace and

-14-

in adapting or managing oneself.  *Id.*  Plaintiff's argument is misplaced.

In the narrative section of Dr. Hoffman's opinion, he noted plaintiff's mental status examination findings from June 8, 2017:  although plaintiff was anxious, depressed and emotional, she was also cooperative and friendly, her thought process was rational and goal-directed, she exhibited no homicidal or suicidal ideation, her attention and concentration were good and her judgment and insight were fair.  R. 148, 386.  Dr. Hoffman also discussed Dr. Gindes' mental status examination findings from his consultative examination of plaintiff on October 26, 2017.  R. 148-49, 395-96.  Finally, Dr. Hoffman noted that plaintiff is able to dress, bathe and groom herself, that she can shop, manage money and occasionally drive a car, and that she occasionally cooks, cleans and does laundry.  R. 149.  Dr. Hoffman ultimately concluded:

> *Data supports the presence of a severe psychiatric impairment that results in moderate functional limitations.  Despite the limitations, the claimant retains the MRFC as follows*:
> I.  Understanding and Memory: The claimant is able to understand and remember instructions and work procedures.
> II.  Sustained Concentration and Persistence: The claimant can maintain adequate attention and concentration to complete work-like procedures and can sustain a routine.
> III.  Social Interaction: The claimant is able to relate and respond in an appropriate manner to meet work-related needs.
> IV.  Adaptation: The claimant exhibits some difficulty in coping with stress, but shows adequate ability to adapt to changes and deal with the mental demands of a work setting.

R. 149 (emphasis added).  In other words, Dr. Hoffman determined plaintiff's MRFC by considering her moderate limitations in the context of the entire record.  Dr. Hoffman's ultimate conclusion does not render his opinion internally inconsistent.

Plaintiff also argues that the ALJ erred because he failed to re-contact Dr. Elias "for clarification" despite observing "that Dr. Elias' opinion is somewhat vague as to the degree of

the claimant's limitation and her residual capacity to perform specific mental work-related activities." Dkt. #16, at 10; R. 57.  Dr. Elias opined that plaintiff's understanding and memory "may be limited at times due to heightened anxiety [and] distress [and] difficulty regulating emotions." R. 412.  He also opined that plaintiff's "[h]eightened anxiety [and] distress may interfere" with her ability to sustain concentration, persistence and pace. *Id.*  Dr. Elias further opined that plaintiff had no limitation in her ability to interact with others but her anxiety and difficulty regulating and managing emotions "may negatively impact [her] ability to adapt at times." R. 413.  As the ALJ pointed out, Dr. Elias' opinion did not specify the degree of plaintiff's limitation in each category or contain a function-by-function analysis. R. 411-13. However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (quotation marks and citation omitted).  In other words, "the duty to re-contact treating medical sources in order to fully develop a record arises only when the ALJ cannot decide the issue of disability based upon the existing evidence." *Castro v. Berryhill*, No. 18 Civ. 1571, 2019 WL 2432120, at *3 (D. Conn. June 11, 2019) (quotation marks and citations omitted).

Here, the ALJ considered treatment records from Dr. Elias' facility (MHA of Westchester) which, as the ALJ noted, reflect plaintiff's chronic issues with anxiety and mood disturbances but otherwise indicate plaintiff's adequate functioning with conservative medication management. R. 57.  In particular, mental status examinations from June 8, 2017 through March 20, 2019 consistently revealed a cooperative and friendly attitude, normal speech and

psychomotor behavior, rational and goal-directed thought processes, no hallucinations/delusions or suicidal/homicidal ideation, good attention and concentration and fair judgment and insight. R. 386, 440, 457, 472, 487, 503, 563, 579. Plaintiff does not contend (nor is there any indication in the record) that the mental health treatment records are incomplete. As the ALJ noted, Dr. Elias' treatment records, combined with his opinion and considered in conjunction with Dr. Hoffman's opinion, suggest plaintiff "has meaningful, but not profound, mental restrictions, with expected difficulty performing work activities that she might find stressful and exacerbate her symptoms, but an adequate capacity to sustain simple work activities within the above [RFC]." R. 57. The ALJ also considered Dr. Gindes' mental status examination and medical source statement (which includes a function-by-function analysis). At bottom, because the existing record provided a sufficient basis for the ALJ to ascertain plaintiff's RFC, the ALJ was not required to re-contact Dr. Elias. *See Gladys B. v. Comm'r of Soc. Sec.*, No. 19 Civ. 1166, 2021 WL 1135470, at *9 (W.D.N.Y. Mar. 25, 2021) (the "mere vagueness" of a treating physician's statement did not create a gap requiring further development of the record where the medical record was otherwise complete).

Finally, plaintiff asserts that the ALJ erroneously rejected Dr. Gindes' opinion on the ground that it stood "in stark contrast" to the remainder of the evidence. Dkt. #16, at 7. I disagree. As the ALJ correctly noted, Dr. Gindes' assessment of marked limitations in plaintiff's ability to understand, remember and apply complex directions and instructions, interact adequately with supervisors, coworkers and the public, sustain concentration, perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior and maintain well-being (R. 396-97) is inconsistent with Dr. Elias' and Dr.

Hoffman's assessment of moderate limitations – which are supported by, and consistent with, Dr. Elias' mental status evaluations.  The ALJ also noted "the somewhat limited probative value of Dr. Gindes' opinion, a one-time examiner without access to treatment records for review and relying in meaningful part on the claimant's subjective reports and anomalous presentation, rather than a full knowledge of the longitudinal nature of the claimant's impairments, as the basis for his opinion." R. 58.  This observation is consistent with Second Circuit precedent:

> We have frequently "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination."  This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.

*Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (internal citation omitted).

In sum, the ALJ weighed the opinions of Dr. Hoffman, Dr. Elias and Dr. Gindes in accordance with the proper legal standards.  Plaintiff's arguments to the contrary are meritless.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's motion is **GRANTED** and plaintiff's motion is **DENIED**.

The Clerk of the Court is directed to terminate the pending motions (Dkt. #15, #23) and close this case.

Dated: November 22, 2021
      White Plains, New York

**SO ORDERED**.

PAUL E. DAVISON, U.S.M.J.